[Cite as *State v. Dinka*, 2019-Ohio-4209.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-03-022<br>CA2019-03-026 |
| | : | |
| - vs - | : | O P I N I O N<br>10/14/2019 |
| | : | |
| JOHN CHRISTOPHER DINKA, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34899

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Law Offices of Jeffrey E. Richards, Jeffrey E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, John Christopher Dinka, appeals from his conviction and sentence in the Warren County Court of Common Pleas for violation of a civil protection order. For the reasons discussed below, we affirm appellant's conviction, but remand the case to the trial court to correct the imposition of postrelease control.

{¶ 2} Appellant and his former girlfriend, Barbara Howard, have three children

together. In 2013, Howard obtained a protection order against appellant. In December 2013, appellant was convicted of violating the protection order in Warren County Common Pleas Case No. 13CR29379.

{¶ 3} In May 2018, after the first protection order had expired, Howard obtained a second protection order against appellant. The protection order was served on appellant on October 24, 2018, while he was serving time in the Warren County Jail. Appellant was released from jail on November 6, 2018. He was arrested later that day and subsequently indicted on one count of violating a protection order in violation of R.C. 2919.27(A)(1), a felony of the fifth degree. The charge arose following allegations that after being released from jail, appellant repeatedly called Howard, left her voicemails, and went within 100 yards of her residence. After his arrest, appellant continued to contact Howard from jail, sending her requests to video chat with him using the jail's HomeWav Visitation System.

{¶ 4} Appellant pled not guilty to the charge and a jury trial was held on January 31, 2019. Officer Tyler Demmien, who is employed at the Warren County Jail, testified that on October 24, 2018, he personally served appellant with the domestic violence civil protection order that had been granted to Howard in May 2018. Appellant signed a receipt, acknowledging he received the protection order. Appellant also told Officer Demmien, "I've already received this several times. * * * [T]his is bull crap that I'm getting this again."

{¶ 5} In addition to serving appellant with the protection order, Officer Demmien read each line of the protection order out loud to appellant. The protection order, which was admitted into evidence as an exhibit, advised appellant that Howard was to have exclusive possession of their formally shared home and that appellant was not to be present within 100 yards of Howard or any place appellant knew or should have known Howard was likely to be. The protection order further advised appellant as follows:

6. RESPONDENT [APPELLANT] SHALL NOT INITIATE OR HAVE ANY CONTACT with the protected persons named in this Order or their residences, businesses, places of employment schools, day care centers, or child care providers. Contact includes, but is not limited to, landline, cordless, cellular or digital telephone; text; instant messaging; fax; email; voice mail; delivery service; social networking media; blogging; writings; electronic communications; or communications by any other means directly or through another person. Respondent may not violate this Order even with the permission of a protected person. [E]xception see #17.

* * *

11. PARENTAL RIGHTS AND RESPONSIBILITIES ARE TEMPORARILY ALLOCATED * * * [to Howard] until further order of the Juvenile Court. * * *

12. VISITATION ORDERS DO NOT PERMIT RESPONDENT TO VIOLATE THE TERMS OF THIS ORDER. As a limited exception to paragraphs 5 and 6, temporary visitation rights are established as follows: The parties shall abide by the Warren County Juvenile Court Model Parenting Schedule regarding parenting matters with Respondent [appellant] having parenting time according to the children age 2-12 Model II (attached). * * * The parties shall abide by this order until further order of the Juvenile Court.

* * *

17. IT IS FURTHER ORDERED [that] [t]he parties may only text message each other regarding child related matters only. The exchanges of the children shall take place at the South Lebanon Early Learning Center * * *. Due to the ages of the children the parties may have contact during the exchanges of the children, if necessary.

Although Officer Demmien did not review the Warren County Juvenile Court's Model Parenting Schedule with appellant, the officer testified that the parenting schedule was attached to the order served on appellant.

{¶ 6} Howard testified that she and appellant had been dating "on and off" for the past six years. She had a prior protection order against appellant, which appellant was convicted of violating in 2013. After that protection order expired, Howard obtained a

domestic violence civil protection order.

{¶ 7} Howard was aware that at the beginning of November 2018, appellant was in jail. She received notice that appellant was due to be released on November 6, 2018. Starting around noon on November 6, 2018, Howard began receiving phone calls from appellant. Appellant called Howard 15 times that day. Although Howard did not answer the calls, she listened to the voicemails appellant left. Appellant's messages indicated he wanted to collect some personal items that were left at Howard's home and he wanted to talk to and see his children.

{¶ 8} Howard explained that she did not initially contact law enforcement to report the 15 phone calls because she believed appellant would leave her alone after he collected the belongings he left at her house. According to Howard, appellant left behind his cell phone, medication, and some of his clothes when he was "evicted" from her residence in May 2018 after she obtained the second protection order.

{¶ 9} Howard testified she arrived home from work around 5:00 p.m. on November 6, 2018, which was the time she normally got home. Around 5:30 p.m., she received a voicemail from appellant indicating that he was leaving the courthouse and walking over on foot. Howard placed appellant's belongings on the porch outside her residence. Around 7:00 p.m., Howard received another phone call from appellant. In the voicemail appellant left, he demanded to know where his medicine was as he claimed that "a bunch of it was missing." After Howard received this voicemail, someone started banging on the windows and the back door of her house. Howard did not look to see who was causing the noise; instead, she called the police to report the incident.

{¶ 10} Howard was aware that appellant had been arrested on November 6, 2018, as appellant attempted to contact her from jail. Appellant called Howard on the night he was

arrested, but she let the call go to voicemail. Subsequently, from November 7, 2018 through January 19, 2019, appellant sent Howard more than 20 invitations to video chat with him using the jail's HomeWav Visitation System. These invitations, the voicemails appellant left, and call logs from Howard's phone were all admitted into evidence.

{¶ 11} Howard's neighbor, Elizabeth Hursong, testified that on November 6, 2018, appellant stopped by her house on two occasions. The first time, appellant stopped to talk for a few minutes. He came back approximately ten minutes later, asking if he could stay overnight at Hursong's home. Hursong refused but gave appellant some food to eat.

{¶ 12} Tye Yelton, another individual who lives in Howard's neighborhood, testified that appellant came to his home around 8:30 p.m. on November 6, 2018, looking for a place to stay. About 20 minutes after Yelton gave appellant permission to stay at his home, a police officer arrived at Yelton's door asking to speak with appellant.

{¶ 13} Warren County Sheriff's Deputy Jason Roberts testified that he was dispatched to Howard's residence on November 6, 2018 on a complaint of a prowler. He searched the area by Howard's home but did not locate anyone. Deputy Roberts then spoke with Howard, who advised him of the civil protection order she had against appellant and of appellant's contact with her that day. Deputy Roberts asked Howard if she knew where appellant may have gone and Howard suggested he check Hursong's residence.

{¶ 14} Deputy Roberts explained that Hursong's home was in close proximity to Howard's home. Using a measuring wheel, Deputy Roberts found that it was only 58 feet from Howard's property to Hursong's front door and, from door-to-door, the two properties were only 96 feet from one another. Deputy Roberts spoke with Hursong, who directed the deputy to Yelton's home.

{¶ 15} At Yelton's home, Deputy Roberts encountered appellant, who admitted he had

been served with a copy of the protection order while in jail. Appellant denied that he went to Howard's house that night, but admitted he had called Howard in an effort to get his medication and clothing. Although appellant claimed that when he left jail earlier that day, he left with nothing on him, Deputy Roberts testified he found appellant in possession of two bottles of medication. Appellant tried to claim that Hursong got the medication from Howard's house for him. However, once appellant realized Deputy Roberts had already spoken to Hursong, appellant stopped talking about the matter.

{¶ 16} Following Deputy Robert's testimony, the state rested its case-in-chief, and appellant testified in his own defense. Appellant admitted that he had a prior misdemeanor conviction for violating a protection order as well as a 2013 felony conviction for violating a protection order. Appellant further admitted that after being released from jail on November 6, 2018, he attempted to contact Howard. He stated he called Howard because he wanted to set up a time to get his belongings and visit with his children, whom he had not seen in more than two months. Appellant believed he was permitted to call Howard between 7:00 a.m. and 9:00 p.m. in order to talk to his children.

{¶ 17} Appellant also admitted that he visited Hursong's home and went onto Howard's porch to pick up his belongings and medication on November 6, 2018. However, appellant denied knocking on Howard's door to see if she was home.

{¶ 18} After considering the foregoing testimony and evidence, the jury found appellant guilty of violating a protection order. The trial court determined appellant was not amenable to available community control sanctions and sentenced him to a 12-month prison term.

{¶ 19} Appellant timely appealed, raising two assignments of error for review. For ease of discussion, we begin with appellant's second assignment of error.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED WHEN IT FOUND THAT SUFFICIENT EVIDENCE HAD BEEN PRESENTED TO CONVICT APPELLANT.

{¶ 22} In his second assignment of error, appellant argues the state presented insufficient evidence to support his conviction as the protection order "is susceptible to two different interpretations" and allowed him to initiate contact with Howard to deal with issues relating to their shared children.

{¶ 23} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code." When an offender has a prior conviction for violating a protection order, the offense is a felony of the fifth degree. R.C. 2919.27(B)(3). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or to be of a certain nature." R.C. 2901.22(C). Furthermore, "[a] person is reckless with respect to

circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶ 25} Appellant concedes that the state presented evidence that a protection order existed in favor of Howard and that he had some contact with Howard. He argues, however, that the state failed to show that he recklessly violated the protection order by having this contact as the protection order contained conflicting guidance on what contact he was allowed to have with Howard. Appellant argues that the protection order contradicted itself by prohibiting him from having contact with Howard but then permitting him to have telephone contact with the children and allowing him to come into contact with Howard during custody exchanges. Appellant argues a reasonable interpretation of the protection order permitted him to call Howard to talk to the children. In support of his argument, appellant cites *Cleveland v. Rogers*, 8th Dist. Cuyahoga No. 80430, 2002-Ohio-3547, and *Toledo v. Hughes*, 174 Ohio App.3d 598, 2007-Ohio-7098 (6th Dist.).

{¶ 26} In *Rogers*, the petitioner, the mother of the defendant's child, obtained a protection order in the domestic relations court that prohibited the defendant from coming within 500 feet of the petitioner or from contacting the petitioner by phone or voicemail. *Rogers* at ¶ 2. The protection order provided that "all issues regarding custody, visitation, and support [of the child] shall be addressed in Juvenile Court." *Id.* The juvenile court subsequently issued an order that allowed the defendant "to have supervised visitation with the child at Templem House by agreement of the parties." *Id.* Thereafter, the defendant paged the petitioner and left a voicemail regarding visitation with the child. *Id.* at ¶ 3. The petitioner recorded the message and filed a complaint charging the defendant with violating the protection order. *Id.*

{¶ 27} At trial, the city played the tape of the voicemail. *Id.* at ¶ 4. After the state

rested, the defendant moved for acquittal, which the trial court denied. *Id.* The defendant then testified on his own behalf, admitting he left a voicemail message but explaining that he thought the protection order and juvenile court's order allowed him to contact the petitioner to make arrangements to visit with the child. *Id.* The defendant was convicted and he appealed. *Id.* ¶ 5-6. The Eighth District reversed the conviction, finding that "there existed insufficient evidence to prove that [the defendant] acted recklessly when he left a voice mail * * * to arrange for visitation with [the child] and therefore his Crim.R. 29 motion should have been granted." *Id.* at ¶ 18. The court concluded that the language in the protection order, read in conjunction with the juvenile court's order that "father [was] to have supervised visitation * * * by agreement of the parties" lent itself to a reasonable interpretation that visitation matters fell outside the scope of the protection order and the defendant was authorized to contact the petitioner to arrange visitations. *Id.* at ¶ 22.

{¶ 28} In *Hughes*, a protection order had been issued ordering the defendant not to initiate any contact with the petitioner. *Hughes*, 2007-Ohio-7098 at ¶ 4. The defendant subsequently filed suit against the protected person in small claims court due to a dispute stemming from an unresolved proposed sale of a motor vehicle between the parties. *Id.* at ¶ 5. A magistrate issued a ruling against the defendant in the small claims action, and the defendant filed objections to the decision. *Id.* The defendant was instructed by a staff member at the clerk's office to mail a copy of his objections to the opposing party. *Id.* at ¶ 6. After complying with this instruction, the defendant was charged with violating the protection order. *Id.* at ¶ 7. He was convicted following a bench trial. *Id.* at ¶ 8. On appeal, the Sixth District reversed the defendant's conviction, finding that appellant's conviction was against the manifest weight of the evidence. *Id.* at ¶ 15. The court concluded that there was "no indication that [the defendant] understood that his conduct could be perceived as an attempt

to circumvent the protection order" as appellant acted in accordance with the civil rules of procedure and the directives of court personnel.  *Id.* ¶ 15.

{¶ 29} The facts of the present case are significantly different than those in either *Rogers* or *Hughes*.  The protection order served on appellant prohibited him from coming within 100 yards of Howard or from initiating contact with Howard, except for "text[ing] messages [to] each other regarding child related matters only" or having contact "during the exchanges of the children, if necessary."  Despite these orders, appellant did not contact Howard by text message regarding the children.  Instead, appellant called Howard 15 times on November 6, 2018 and left her numerous voicemails.  While appellant sought to make arrangements to see or talk to the children in some of the voicemails, there were at least six voicemails from that day where appellant did not mention the children.  Rather, appellant left voicemails advising Howard that he was "at the courthouse," that he wanted to get medicine, clothing, and other belongings he had left at Howard's residence, and that he wanted Howard to call him back.  The volume and content of the voicemails surpasses even an expansive interpretation of the type of limited contact that was permitted by the express terms of the protection order.  If appellant wanted to arrange a telephone call with the children, he was required to do so by text message.

{¶ 30} Additionally, the state presented evidence that appellant violated the protection order by coming within 100 yards of Howard when he visited Howard's neighbor Hursong and when he entered on Howard's front porch to collect his medicine.  Hursong testified appellant visited her house twice on November 6, 2018, and Deputy Roberts measured that Hursong's property was less than 100 feet away from Howard's property.  The state also presented circumstantial evidence in its case-in-chief that appellant failed to stay more than 100 yards away from Howard when he entered onto her front porch.  The state introduced evidence that

appellant left Howard a voicemail stating that he was coming to collect his medicine and belongings, that appellant left Howard another voicemail complaining that some of his medicine was missing, and that when appellant was arrested at Yelton's home, he was found in possession of two bottles of medication. Appellant argues the state failed to present evidence that appellant knew Howard was present when he went to her home. However, Howard testified she usually got home from work around 5:00 p.m. – something appellant was likely to know as he and Howard had previously lived together. The protection order ordered appellant to stay more than 100 yards away from Howard, the protected person, "wherever those protected persons may be found, or any place the Respondent knows or should know the protected persons are likely to be, even with the Petitioner's permission." Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that appellant acted with heedless indifference to the consequences when he went to Howard's home to collect his belongings, knowing that Howard was likely to be at her home.

{¶ 31} Finally, the state presented evidence that appellant continued to try to initiate contact with Howard after his November 6, 2018 arrest. While in jail awaiting indictment and trial, appellant sent Howard more than 20 invitations to video chat with him using the jail's HomeWav Visitation System.

{¶ 32} Accordingly, given the foregoing evidence, we find that the state presented sufficient evidence that appellant was guilty of violating a protection order. Appellant's second assignment of error is, therefore, overruled.

{¶ 33} Assignment of Error No. 1:

{¶ 34} THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO THE MAXIMUM PERIOD IN PRISON.

**{¶ 35}** In his first assignment of error, appellant argues the trial court erred when it imposed a 12-month prison term without considering "all of the statutory factors" set forth R.C. 2929.11 and 2929.12.

**{¶ 36}** We review the imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *Marcum* at ¶ 10. Rather, R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers,* 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8; *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Thus, this court may "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg,* 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

**{¶ 37}** A trial court has discretion to impose a prison term on an offender who is convicted of a fifth-degree felony that is not an offense of violence if the offender "at the time of the offense was serving, or the offender previously had served, a prison term." R.C. 2929.13(B)(1)(b)(x). "[I]n determining whether to impose a prison term as a sanction for a felony of the * * * fifth degree, the sentencing court shall comply with the purposes and

principles of sentencing under section 2929.11 of the Revised Code and with section 2929.12 of the Revised Code." R.C. 2929.13(B)(2).

{¶ 38} The purposes of felony sentencing are to protect the public from future crime by the offender, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. R.C. 2929.11(A). A felony sentence must be reasonably calculated to achieve the purposes set forth in R.C. 2929.11(A) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). In sentencing a defendant, a trial court is not required to consider each sentencing factor, but rather to exercise its discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. *State v. Littleton*, 12th Dist. Butler No. CA2016-03-060, 2016-Ohio-7544, ¶ 12. The factors set forth in R.C. 2929.12 are nonexclusive, and R.C. 2929.12 explicitly allows a trial court to consider any relevant factors in imposing a sentence. *State v. Birt,* 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 64.

{¶ 39} After a thorough review of the record, we find no error in the trial court's decision to sentence appellant to 12 months in prison for his fifth-degree felony offense. The record plainly reveals that appellant's sentence is not clearly and convincingly contrary to law as appellant served a prior prison term, as contemplated by R.C. 2929.13(B)(1)(b)(x), the court properly considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, and appellant was sentenced within the permissible statutory range for a fifth-degree felony in accordance with R.C. 2929.14(A)(5).

{¶ 40} Although the trial court did not specifically reference R.C. 2929.11 or 2929.12 at

the sentencing hearing, the court nonetheless contemplated the proper statutory considerations. *See State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2016-Ohio-4918, ¶ 10. In its sentencing entry, the trial court stated that it had

> considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. §2929.11. The Court has balanced the seriousness and recidivism factors under R.C. §2929.12 and considered the factors under R.C. §2929.13.

As we have previously recognized, "[t]he fact that [a] trial court [does] not cite to R.C. 2929.11 and 2929.12 during [a] sentencing hearing is immaterial [where] * * * it specifically cite[s] to both statutes within its sentencing entry." *Julious*, 2016-Ohio-4822 at ¶ 11.

**{¶ 41}** Furthermore, contrary to appellant's assertions, "there is no statutory or common law requirement that the trial court incorporate any specific findings in its sentencing entry specific to the principles and purposes of sentencing, as well as the seriousness and recidivism factors found in R.C. 2929.11 and 2929.12." *State v. Van Tielen*, 12th Dist. Brown No. CA2015-09-025, 2016-Ohio-1288, ¶ 14. *See also State v. King*, 12th Dist. Butler CA2018-05-101, 2019-ohio-1492, ¶ 9. Rather, the law only requires that the record demonstrate that the trial court properly *considered* the purposes and principles of sentencing as well as the seriousness and recidivism factors in fashioning an appropriate sentence. *Id.* Here, the record demonstrates the court considered the appropriate statutory factors in determining appellant's sentence. The court considered appellant's history of violating protection orders, noting appellant's prior misdemeanor and felony convictions for violation of a protection order. The court discussed the fact that court-ordered supervision had not prevented appellant from contacting Howard in the past, nor had the court's explicit warnings. As the court noted, it had "specifically warned [appellant] not to contact [Howard]"

the last time appellant appeared before it, but appellant ignored the court's directive. The court was clearly troubled by appellant's failure to abide by its warnings and the prohibitions set forth in the protective order, stating, "You know, I wish I knew what to do here to stop you from [contacting Howard]."

{¶ 42} Appellant's failure to express genuine remorse for his actions also supports the trial court's sentencing decision. *See, e.g., State v. Rehab*, 150 Ohio St.3d 152, 2017-Ohio-1401, ¶ 28 (noting that "[g]enuine remorse is one factor to be considered by the trial court when it makes it sentencing decision"). Appellant did not accept responsibility or show remorse for his wrongdoing at the sentencing hearing. Instead, appellant tried to justify his actions, stating that he contacted Howard because he "needed [his] medicine" and "was calling to talk to [his] kids." The trial court was entitled to consider appellant's failure to accept responsibility and show genuine remorse in imposing a 12-month prison term.

{¶ 43} Accordingly, to the extent that the trial court considered the purposes and principles of sentencing under R.C. 2929.11 as well as the factors listed in R.C. 2929.12, appropriately concluded appellant was not amenable to a community control sanction pursuant to R.C. 2929.13(B), and imposed a sentence within the permissible statutory range for a fifth-degree felony in accordance with R.C. 2929.14(A)(5), we overrule appellant's first assignment of error and affirm his sentence.

{¶ 44} However, after reviewing the record we notice and raise, sua sponte, an error in the imposition of postrelease control. R.C. 2929.19 requires that a court, when imposing a sentence, notify the offender at the sentencing hearing that he will be subject to supervision pursuant to R.C. 2967.28 and that upon violating supervision or a condition of postrelease control, the parole board may impose a prison term of up to one-half of the prison term originally imposed upon the offender. *See* R.C. 2929.19(B)(2)(d) and (e). Failure to do so

renders that part of the sentence void and it must be set aside. *State v. Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 26. "However, R.C. 2929.191 provides a statutory remedy to correct a trial court's failure to properly impose postrelease control." *State v. Langford*, 12th Dist. Warren No. CA2015-08-074, 2016-Ohio-456, ¶ 16, citing *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, ¶ 23.

{¶ 45} In the present case, the sentencing entry seeks to impose a three-year period of optional postrelease control. However, the transcript from the sentencing hearing reveals that the trial court failed to advise appellant under R.C. 2967.28(C) that he was subject to a discretionary period of postrelease control of three years following his release from prison, and it further failed to advise appellant under R.C. 2929.19(B)(2)(e) that he could face an additional prison term if he violated the terms of his postrelease control. Accordingly, as the trial court failed to properly impose postrelease control at the sentencing hearing, we sustain appellant's first assignment of error in part and reverse and remand this case for the limited purpose of permitting the trial court to employ the postrelease control correction procedures set forth in R.C. 2929.191. In all other respects, the judgment of the trial court is affirmed.

{¶ 46} Judgment affirmed in part, reversed in part, and the matter remanded.

S. POWELL and M. POWELL, JJ., concur.