[Cite as *State v. Mullins*, 2023-Ohio-4230.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2023CA0005 |
| CHRISTOPHER MULLINS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Coshocton County Court
of Common Pleas, Case No. 2022 CR
0055

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 21, 2023

APPEARANCES:

For Plaintiff-Appellee

BENJAMIN E. HALL
Coshocton County Prosecuting Attorney

CHRISHANA L. CARROLL
Assistant Prosecuting Attorney
318 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

BRIAN W. BENBOW
265 Sunrise Center Drive
Zanesville, Ohio 43701

*Hoffman, J.*

**{¶1}** Defendant-appellant Christopher Mullins appeals the judgment entered by the Coshocton County Common Pleas Court convicting him following his pleas of no contest to aggravated vehicular homicide (R.C. 2903.06(A)(2)(a),(B)(3)) and vehicular assault (R.C. 2903.08(A)(2)(b),(C)(2)), sentencing him to an aggregate term of incarceration of ten to ten and one-half years, and imposing a lifetime driver's license suspension. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE[1]

**{¶2}** On October 18, 2021, Deputy Albert Havranek was dispatched to a two-vehicle accident in Coshocton County. While en route to the scene, the deputy was advised by dispatch the operator of one of the vehicles fled on foot in an unknown direction.

**{¶3}** While traveling northbound on County Road 10, a Honda CRV in which Charlotte and Raymond Goodwill were traveling was struck by a Chevy pickup truck which crossed the centerline. Raymond Goodwill died of injuries received in the accident.

**{¶4}** Witnesses at the scene did not see the operator of the truck. The driver's side airbag on the pickup had deployed and was swabbed for blood. Blood was also located on the inside door panel of the driver's door. The plate on the truck was registered to Inky Twinkles LTD, who reported the vehicle had been stolen. A black hooded sweatshirt was found in the vehicle containing Appellant's identification.

**{¶5}** Officers used an aerial drone equipped with a flare device to check the area for a suspect, but were unable to locate any heat signature which would be given off by

---

[1] Because Appellant waived the presentation of facts at his plea hearing, the facts as set forth in this opinion are from the presentence investigation report (hereinafter "PSI").

a human.  A BOLO was issued to surrounding counties for Appellant.  Dispatch attempted a ping of Appellant's cell phone, and located the phone near an address in Tuscarawas County; however, officers were unable to locate Appellant at this address.

{¶6}  On December 9, 2021, the Bureau of Criminal Investigation (hereinafter "BCI") notified the Coshocton County Sheriff's Department the DNA swab submitted matched Appellant's DNA.  BCI requested a further sample to confirm the match. Appellant was picked up and held in the Coshocton County Justice Center.  A warrant was issued for Appellant's DNA.  BCI subsequently confirmed the blood sample taken from the pickup truck at the scene of the accident matched Appellant's DNA.

{¶7}  Appellant was indicted by the Coshocton County Grand Jury with aggravated vehicular homicide, vehicular assault, and two counts of failure to stop after an accident.  Appellant entered a plea of no contest to aggravated vehicular homicide and vehicular assault, and the State entered a nolle prosequi of the two counts of failure to stop after an accident.  The trial court sentenced Appellant to a term of incarceration of seven to ten and one-half years for aggravated vehicular homicide and to thirty-six months for vehicular assault, to be served consecutively.  The trial court imposed a lifetime driver's license suspension for aggravated vehicular homicide.  It is from the January 26, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN IMPOSING A SEVEN YEAR SENTENCE FOR A VIOLATION OF AGGRAVATED VEHICULAR HOMICIDE WHEN THERE WERE NO

AGGRAVATING FACTORS IN HOW APPELLANT COMMITTED THE OFFENSE. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES THAT WERE NOT SUPPORTED BY THE RECORD AND THUS CONTRARY TO LAW.

II. THE TRIAL COURT ERRED IN IMPOSING A LIFETIME DRIVER'S LICENSE SUSPENSION THAT WAS NOT SUPPORTED BY THE RECORD AND THUS CONTRARY TO LAW.

III. IT WAS PLAIN ERROR FOR THE TRIAL COURT TO IMPOSE SENTENCE UNDER THE REAGAN TOKES LAW BECAUSE ITS PROVISIONS ARE UNCONSTITUTIONAL NULLITIES.

I.

{¶8} In his first assignment of error, Appellant first argues the trial court erred in imposing a minimum sentence of seven years for aggravated vehicular homicide because there were no aggravating factors present.

{¶9} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Roberts,* 5th Dist. Licking No. 2020 CA 0030, 2020-Ohio-6722, ¶13, *citing State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *Id., citing State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

**{¶10}** When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

**{¶11}** "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

**{¶12}** R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶13}** Nothing in R.C. 2953.08(G)(2) permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to

determine a sentence which best reflects compliance with R.C. 2929.11 and R.C. 2929.12. *State v. Jones*, 1163 Ohio St.3d 242, 69 N.E.3d 649, 2020-Ohio-6729, ¶ 42. Instead, we may only determine if the sentence is contrary to law.

**{¶14}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Pettorini*, 5th Dist. Licking No. 2020 CA 00057, 2021-Ohio-1512, 2021 WL 1714216, ¶¶ 14-16 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 & CA2019-03-026, 2019-Ohio-4209, ¶ 36.

**{¶15}** The trial court stated in both the sentencing entry and orally at the sentencing hearing it had considered the statutory sentencing criteria.  The sentence is within the permissible statutory range.   We find the sentence is not clearly and convincingly contrary to law, and this Court is not permitted to independently weigh the statutory factors and substitute our judgment for the trial court.  *Jones, supra.*

**{¶16}** Appellant next argues the trial court failed to make the requisite findings for the imposition of consecutive sentences at the sentencing hearing,[2] and further the record does not support the trial court's findings.

**{¶17}** R.C. 2929.14(C)(4) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender

___

[2] At oral argument in this matter, counsel for Appellant conceded the trial court did make the appropriate findings for imposing consecutive sentences during sentencing.

and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶18}** The trial court must make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings, nor must it recite certain talismanic words or phrases in order to be considered to have complied. *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus.

**{¶19}** In deciding whether to impose consecutive sentencing, the trial court is to consider the aggregate term of incarceration which will result from consecutive

sentencing. *State v. Gwynne*, 2022-Ohio-4607, 2022 WL 17870605, ¶¶14-15. In *Gwynne*, the Ohio Supreme Court recently clarified the standard of review this Court is to use on review of consecutive sentences:

It is important to understand that the standards referenced above have very specific meanings and fall into one of two categories—either a standard of review or an evidentiary standard of proof. "Abuse of discretion," "clearly erroneous," and "substantial evidence" are traditional forms of appellate-court deference that are applied to a trial court's decisions. They are standards of review that are applied by a reviewing court to certain decisions that are made by a fact-finder. They are, in essence, screens through which reviewing courts must view the original fact-finder's decision. In contrast, "preponderance," "clear and convincing," and "beyond a reasonable doubt" are evidentiary standards of proof. These standards apply to a fact-finder's consideration of the evidence. R.C. 2953.08(G)(2)'s requirement that appellate courts apply the clear-and-convincing standard on review indicates that the legislature did not intend for appellate courts to defer to a trial court's findings but to act as a second fact-finder in reviewing the trial court's order of consecutive sentences.

In this role as a finder of fact, the appellate court essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance. There are three key differences, however. The first difference, which is discerned from the language of R.C. 2953.08(G)(2), is

that the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made. In other words, a reviewing court cannot determine for itself which of the three permissible findings within R.C. 2929.14(C)(4)(a)-(c) might apply to satisfy the third required finding for imposing consecutive sentences, as the trial court is permitted to do. The second difference involves the standard of proof. Whereas the trial court's standard of proof under R.C. 2929.14(C)(4) is a preponderance of the evidence—i.e., that when considered as a whole, the evidence demonstrates that the proposition of fact represented by the finding is more likely true, or more probable, than not—an appellate court applies a clear and convincing evidence standard of proof. And the third difference is the inversion of the ultimate question before the court.

Whereas the trial court is tasked with determining whether the proposition of fact represented by each finding is more likely—or more probably—true than not, an appellate court's task is to determine whether it has a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record.

Thus, when viewed in its proper context, the deference that a trial court's consecutive-sentence findings receive comes from the language of R.C. 2953.08(G)(2), which imposes a higher evidentiary standard to reverse or modify consecutive sentences. It does not stem from any statutory requirement that the appellate court defer to the trial court's findings when

considering whether reversal or modification is appropriate under R.C. 2953.08(G)(2).

**{¶20}** *Id.* at ¶¶20-22.

**{¶21}** The trial court made the requisite findings at the sentencing hearing as follows:

> In imposing consecutive sentences, the Court finds that consecutive service is necessary to protect the public from future crime and to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct at to the danger the offender poses to the public. Specifically, the Court finds that both of these offenses were committed while the defendant was under a community control sanction. The Court also finds that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶22}** Sent. Tr. 34.

**{¶23}** Before announcing its sentence, the trial court stated on the record at the sentencing hearing:

> Let me also note that, while Mr. DeLaCruz is correct, that this was an accident, there's no evidence that the defendant intended to harm

anyone that evening when he drove that car.  The issue before the Court is that, while it was an accident, it caused the death of someone else with regard to Count 1.  You caused the death of another person.  And, as noted in the body of the charge, Mr. Mullins, you were driving under a suspension. It was a court suspension for a drug charge at the time.  You shouldn't have even been driving that vehicle, and I think that's what Ms. Goodwill was expressing at the end of the victim's statement.

And then, of course, is Count 2, not to be forgotten, that you caused someone serious physical harm.

There is also the issue of the defendant's version of the events.  But, because we did not have a trial here, the Court views the official version as set forth in the pre-sentence investigation, and then the Court gets to see the defendant's criminal history.

I am not going to consider the arguments or allegations that they may be whether they are contained in the pre-sentence investigation report or whether they were mentioned here that Mr. Mullins fled the scene.  Those two charges were the subject of the dismissal or nolle prosequi.  So we're just looking at the accident itself that caused the death of one person and seriously harmed another.

So, I look at the criminal history as noted.  The defendant was under a driver's license suspension and that's for aggravated possession of drugs from Case 2019-CR-070305 out of Tuscarawas County.  What is of note is that the defendant was also under a community control sanction for that

case, or what we call probation, at the time these offenses were committed. He was under felony probation.

More alarming is the conviction in 2013 for the illegal assembly of chemicals for the manufacture of drugs, a felony of the second degree. At that time Mr. Mullins was sentenced to serve a five-year term of incarceration in a state penal institution.

I also note that prior to that, in 2005, Mr. Mullins was convicted of breaking and entering and possession of drugs, both felonies of the fifth degree in Portage County, Ohio. The defendant was placed on probation at that time.

The Court also notes that for the 2019 offense, out of Tuscarawas County, the defendant was afforded an opportunity to rehabilitate through a drug and alcohol rehabilitation program, known as Cedar Ridge. The defendant had that program made available to him at that time. So the defendant was on probation, had been to treatment, and had the two prior felony convictions. We'll make that three if we include the Tuscarawas County case.

So, Mr. Mullins, you come before the Court having previously been on probation, having previously been afforded drug and alcohol rehabilitation with three prior convictions, and then that night you decided to drive while you were under suspension.

**{¶24}** Sent. Tr. 30-33.

**{¶25}** Upon review of the sentencing transcript and the presentence investigation filed under seal in this case, we are not "left with a firm belief or conviction that the findings are not supported by the evidence." *See Gwynne, supra* at ¶27. There were two victims in the instant case, one who died as a result of the vehicle accident, and one who was seriously injured. Appellant was on probation and under a license suspension at the time of the incident. Appellant's criminal record reflected several felonies and several opportunities for rehabilitation. We find the trial court did not err in its imposition of consecutive sentences.

**{¶26}** The first assignment of error is overruled.

II.

**{¶27}** In his second assignment of error, Appellant argues the trial court erred in imposing a lifetime driver's license suspension for aggravated vehicular homicide.

**{¶28}** R.C. 2903.06(B)(3) provides that in addition to any other sanctions, the trial court shall impose a class two suspension of a defendant's operator's license following a conviction of aggravated vehicular homicide. R.C. 4510.02(A)(2) provides a class two suspension is for a period of three years to life.

**{¶29}** The decision of whether to suspend a defendant's license and whether to suspend it for the maximum period imposed by statute is within the discretion of the trial court. *See, e.g., State v. Foureman,* 68 Ohio App.3d 162, 166, 587 N.E.2d 925, 928 (12th Dist. Preble1990). The trial court made the following findings concerning its decision to impose a lifetime license suspension:

All right. The Court needs to impose a mandatory driver's license suspension. The Court notes, again, that the defendant was driving under a drug offense suspension at the time that he committed the offense. The Court further notes from the pre-sentence investigation and report that Mr. Mullins has a significant driving record, which includes driving under Financial Responsibility Act suspension and OVI, as well as flee and allude. Therefore, the Court finds that only a lifetime driver's license suspension is appropriate in this matter.

**{¶30}** Sent. Tr. 37.

**{¶31}** Based on the circumstances of the accident in the instant case, as well as Appellant's significant driving record, we find the trial court did not abuse its discretion in imposing a lifetime suspension. The second assignment of error is overruled.

III.

**{¶32}** In his third assignment of error, Appellant argues the trial court erred in imposing sentence for aggravated vehicular homicide under the Reagan Tokes Act, which he argues is unconstitutional. The Ohio Supreme Court has found the Reagan Tokes Act to be constitutional. *State v. Hacker*, Slip Op. No. 2023-Ohio-2535, 2023 WL 4750237. The third assignment of error is overruled.

{¶33}  The judgment of the Coshocton County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur