[Cite as *State v. Morris*, 2021-Ohio-2646.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

TYLER A. MORRIS aka
TYLER MULLINS

     Defendant-Appellant

JUDGES:
Hon. John W. Wise, P. J.
Hon. Patricia A. Delaney, J.
Hon. Earle E. Wise, Jr., J.

Case No. 20-COA-015

O P I N I O N

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. 19-CRI-218

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:

APPEARANCES:

For Plaintiff-Appellee

BRIAN A. SMITH
BRIAN A. SMITH LAW FIRM, LLC
755 White Pond Drive, Suite 403
Akron, Ohio 44320

For Defendant-Appellant

CHRISTOPHER R. TUNNELL
PROSECUTING ATTORNEY
110 Cottage Street
Ashland, Ohio 44805

*Wise, John, P. J.*

**{¶1}** Defendant-appellant Tyler A. Morris appeals his conviction and sentence entered in the Ashland County Common Pleas Court on two counts of Complicity (Aggravated Murder), one count of Complicity (Aggravated Burglary), one count of Complicity (Aggravated Robbery), two counts of Complicity (Attempted, Aggravated Murder), one count of Aggravated Trafficking in Drugs, one count of Unlawful Transaction in Weapons, and one count of Improperly Furnishing Firearms to a Minor, following a jury trial.

**{¶2}** Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** On or about June 8, 2019, at approximately 11:00 or 12:00 p.m., Appellant Tyler A. Morris aka Tyler Mullins and his co-defendant Michael Watson, went to the Almond Tree Inn in Ashland, Ohio, to conduct a drug transaction. Appellant Morris took a Ruger .22 firearm with him, which he carried in his bookbag. (T. at 748). While Watson waited outside, Appellant went inside and sold a half of a gram of methamphetamine to Timothy Maust and Elizabeth Bunnell. (T. at 748).). Bunnell tasted the methamphetamine and told Appellant that she did not think it was good and shoved Appellant out of the room and slammed the door, without paying for the drugs. *Id.* Appellant called his supplier, Kade Shank, and told him what had happened. Shank responded by telling Appellant to "go get my drugs back or go get my money." (T. at 750).

**{¶4}** Three separate trips were made to the Almond Tree to try to collect the money owed to Appellant or to retrieve his drugs.

**{¶5}** The first attempt took place the following day, on June 9, 2019. (T. at 753). Appellant took the gun out of his bookbag, handed it to Watson and told him to "clean it off and go back over there and try to get the drugs back. (T. at 749-50). 751). Appellant then called Timothy Castle and Kareem Thomas to assist with getting the drugs or the money back. (T. at 749). When they arrived, Sammy Castle, Timothy Castle's brother, was with them. (T. at 752). Appellant gave the gun to Kareem and then sent them, along with Watson, back to the Almond Tree Inn to get either the money or the drugs back. (T. at 748-750). Appellant provided methamphetamine to his associates in exchange for them helping him try to get his drugs back. *Id.*

**{¶6}** Upon arriving at the Almond Tree, Watson told Maust and Bunnell to "open the door and give the meth back or we are coming in." (T. 752). Timothy Castle kicked the door to Maust and Bunnell's room a few times and Sammy Castle managed to open the door enough for Watson to see that Bunnell was sitting on the floor in front of the door. (T. at 606, 752). They heard Bunnell on the phone stating that someone was trying to kick in the door, and thinking that she was calling the police, the men fled. (T. at 752).

**{¶7}** On the afternoon of June 10, 2019, Appellant met with Watson, Sammy Castle and Gregg Kuzawa and discussed a plan to "go to the Almond Tree Inn and kick in the door and try to get the drugs back." (T. at 759). Watson testified that if the drugs were not there "[w]e were going to shoot up the house." Id. He stated that he would be the one to do the shooting, using Appellant's Ruger .22. (T. at 760). Watson explained that the men were going to "all have masks" and that they were going to "[l]ike shoot through the door, basically letting them know not to mess with us." *Id.*

{¶8}   Watson stated that Appellant took the gun out of his waistband and gave it to him and that he put it in a Taco Bell bag. *Id*. He stated that he, Sammy Castle and Kuzawa rode back to the Almond Tree Inn on stolen bicycles. (T. at 763).  However, when they arrived at the Almond Tree they were chased away by a friend of Maust, who told them to leave or he would make them leave. (T.at 617, 764). After being chased from the Almond Tree, the men met back up with Appellant, who had waited at a pavilion in the park across the street. (T. at 618-619, 764). At that time, Watson returned the gun to Appellant, and the group went back to Appellant's house and did some methamphetamine. (T. at 766). Among other things, the men again discussed shooting "the house up" if Maust and Bunnell did not have the drugs or the money, and that if the door would not open they would shoot through the door. (T. at 773-774).  The men also discussed the issue of collecting the shell casings. *Id*.

{¶9}   Watson stated that he went home later that evening and that after his mom left for work, he took a sock and cut a hole in it, with the intention of putting the sock over the gun and collecting the spent casings inside the sock. *Id*.

{¶10} Later in the evening of June 10, 2019, Watson and Sammy Castle again met up with Appellant behind Appellant's house. (T. at 776). Gregg Kuzawa and Gregory Pierce were also with Appellant behind the garage. (T. at 776). Appellant gave the gun back to Watson and told Watson to "shoot at least four times". (T. at 776-777). Watson, along with Kuzawa and Samuel Castle, rode their stolen bicycles back to the Almond Tree. (T. at 777-778). Watson testified that he understood the new plan to be that when he kicked the door, he was to shoot four times. (T. at 777). Watson stated that he had a general idea that Appellant wanted Watson to shoot Maust and Bunnell. (T. at 807).

**{¶11}** This time when Watson, Castle and Kuzawa arrived at the Almond Tree, Watson kicked in the door to Maust and Bunnell's room. (T.at 778). Bunnell yelled at Watson "are you ready to get your ass beat", and Watson replied "are you ready to get shot". *Id.* Watson then began shooting, firing a total of six shots, and when the gun jammed, they ran from the room. *Id.* Bunnell was shot on the side neck area. (T. at 631). Maust was shot in the head and chest and died from his injuries. (T. at 781).

**{¶12}** Watson, Castle and Kuzawa fled the scene of the crime, running across the street to the park where they had left their bikes. (T. at 782). They threw their bikes into a creek, ran through back yards to avoid the police, and went to different houses before returning to Appellant's home. (T. at 784-785).

**{¶13}** Officers from the Ashland Police Department arrived at the Almond Tree and shortly thereafter began searching for assailants.

**{¶14}** Appellant Morris was taken into custody as a result of the investigation. After first denying any involvement in Maust's murder and Bunnell's attempted murder, Appellant admitted to the Ashland Police Department that he provided the gun to Watson and that after the shooting, he hid the gun in his room after taking it apart. (T. at 519-533).

**{¶15}** On June 12, 2019, Appellant Tyler Morris aka Tyler Mullins was charged by Complaint in the Ashland County Juvenile Court, alleging Appellant to be delinquent, and charging him with Complicity to Aggravated Murder with a firearm specification, Complicity to Aggravated Burglary, and Complicity to Attempted Aggravated Murder with a firearm specification. (Bindover Hrng T. at 4). The case was bound over to the Ashland County Court of Common Pleas.

{¶16} On October 10, 2019, the Ashland County Grand Jury indicted Appellant on the following charges: two counts of Complicity to Aggravated Murder, each unclassified felonies, in violation of R.C. §2923.02 and §2903.01(A), and each containing a firearm specification under R.C. §2941.145; four counts of Conspiracy to Aggravated Murder, each unclassified felonies, in violation of R.C. §2923.01(A)(1) and §2903.01(A), and each containing a firearm specification under R.C. §2941.145; one count of Complicity to Aggravated Burglary, a first-degree felony, in violation of R.C. §2923.03(A)(2) and §2911.11(A)(2), and containing a firearm specification under R.C. §2941.145; one count of Complicity to Aggravated Robbery, a first-degree felony, in violation of R.C. §2923.03(A)(2) and §2911.01(A)(1), and containing a firearm specification under R.C. §2941.145; two counts of Complicity to Attempted Aggravated Murder, both first-degree felonies, in violation of R.C. §2923.03(A)(2), §2923.02(A) and §2903.0a(A) and (B), respectively, and each containing a firearm specification under R.C. §2941.145; one count of Aggravated Trafficking in Drugs, a fourth-degree felony, in violation of R.C. §2925.03(A)(1); one count of Unlawful Transaction in Weapons, a fourth-degree felony, in violation of R.C. §2923.20(A)(1); and one count of Improperly Furnishing Firearms to a Minor, a fifth-degree felony, in violation of R.C. §2923.21(A)(3).

{¶17} On February 26, 2020, the State moved to amend the Indictment by amending the dates in Counts One through Ten, and Counts Twelve and Thirteen, from "on or about the period between June 10, 2019 and June 11, 2019," to read "on or about the period between June 9, 2019 and June 11, 2019," and by amending the date in Count Eleven to read "June 9, 2019."

{¶18} On February 28, 2020, the trial court granted the State's Motion.

**{¶19}** The case proceeded to a jury trial on March 2, 2020.

**{¶20}** On March 6, 2020, following deliberations, the jury found Appellant guilty of Counts One and Two, and Seven through Thirteen, of the Indictment, along with the firearm specifications thereon. The jury acquitted Appellant on Counts Three through Six of the Indictment.

**{¶21}** At the sentencing hearing on April 20, 2020, the State elected to proceed on Counts One, Eight, Nine, and Twelve, along with the single firearm specification, with the remaining counts merged. (Sent. T. at 11).

**{¶22}** By Judgment Entry filed April 24, 2020, the trial court sentenced Appellant as follows: on Count One: to life in prison with parole eligibility after 25 years; on Count Eight: to an indefinite sentence of 6 to 9 years in prison; on Count Nine: to an indefinite sentence of 10 to 15 years in prison; on Count Eleven: to 9 months in prison; on Count Twelve: to 9 months in prison; and on the firearm specification to Count One: to 3 years in prison. The trial court ordered that the sentences on Counts One and Nine, and the firearm specification, be served consecutively to one another, and concurrently to the sentences on Counts Eight, Eleven, and Twelve, for a total aggregate sentence of life in prison with parole eligibility after 38 to 43 years. *Id*. The trial court credited Appellant with 314 days served. (Judgment Entry-Sentencing, April 24, 2020).

**{¶23}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶24}** "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶25}** "II. APPELLANT'S CONVICTIONS FOR COMPLICITY TO AGGRAVATED MURDER, COMPLICITY TO AGGRAVATED ROBBERY, AND COMPLICITY TO ATTEMPTED AGGRAVATED MURDER WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶26}** "III. THE TRIAL COURT'S DECISION TO ALLOW AUTOPSY PHOTOS OF TIMOTHY MAUST WAS AN ABUSE OF DISCRETION.

**{¶27}** "IV. THE TRIAL COURT'S DECISION TO ALLOW MESSAGES FROM APPELLANT'S GIRLFRIEND, SAIGE MARIE WICKHAM, WAS AN ABUSE OF DISCRETION.

**{¶28}** "V. R.C. 2953.08(D)(3) IS UNCONSTITUTIONAL BOTH ON ITS FACE, AND AS APPLIED, BECAUSE IT VIOLATES ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**{¶29}** "VI. THE TRIAL COURT'S SENTENCE OF APPELLANT TO LIFE IN PRISON WAS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION, BECAUSE THE TRIAL COURT FAILED TO CONSIDER APPELLANT'S YOUTH AS A FACTOR IN SENTENCING.

**{¶30}** "VII. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS NOT SUPPORTED BY THE RECORD.

**{¶31}** "VIII. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO REQUEST A COMPETENCY EVALUATION OF APPELLANT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND A VIOLATION OF APPELLANT'S RIGHT TO DUE

PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**I., II.**

{¶32} In his first and second assignments of error, Appellant argues that his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

{¶33} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶34} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶35} Appellant is challenging his convictions for Complicity to Aggravated Murder, Complicity to Attempted Aggravated Murder, and Complicity to Aggravated Robbery, which provide:

**{¶36}** R.C. §2923.03(A)(2) <u>Complicity</u>

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

\*\*\*

(2) Aid or abet another in committing the offense;

**{¶37}** R.C. §2903.01 <u>Aggravated Murder</u>

(A) No person shall purposely, and with prior calculation and design, cause the death of another ...

**{¶38}** R.C. §2923.02 <u>Attempt</u>

(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

**{¶39}** R.C. §2911.01(A)(1) <u>Aggravated Robbery</u>

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

**{¶40}** Initially, Appellant argues that his convictions were based on the testimony of his three co-defendants, each of whom had entered into plea agreements which were conditioned on their testimony at Appellant's trial. Appellant argues that his co-defendants

had an incentive to give testimony that was favorable to the State in exchange for favorable terms in their plea bargains, and that such rendered their testimony not credible.

**{¶41}** Upon review, we find that co-defendants Kuzawa, Castle and Watson each testified concerning their plea agreements with the State and admitted that they were receiving lesser sentences in exchange for testifying and telling the truth. (T. at 193, 246, 599-601, 788-790). Further, the jury had the opportunity to assess each witness' credibility on the stand and apparently determined they were telling the truth at trial.

**{¶42}** We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶61, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness's testimony, but may accept only portions of it as true. *Id.*

**{¶43}** Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶30, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-

926, 2002-Ohio-2425, 2002 WL 1013033, ¶16. In the instant case, Appellee's evidence was compelling, and the jury was free to weigh the evidence accordingly.

**{¶44}** Appellant next argues the evidence does not demonstrate that he acted with "prior calculation and design" to cause Maust's death. Appellant argues that he only intended to scare or intimidate Maust and Bunnell, not cause, or attempt to cause, their death.

**{¶45}** At trial, when co-defendant Watson was asked about the plan to scare Bunnell and Maust, he stated "[w]e were supposed to scare them with the gun" and "[p]ull the gun out and put it in their face." (T. at 774). Watson further testified that Appellant told him to fire the gun four times, and that the plan was either to "shoot the place up" or to fire the gun through the door. (T. at 759-760, 800).

**{¶46}** Upon review, we find that that testimony presented to the jury shows that Appellant was angry at the victims and wanted either his money or the return of his drugs. Appellant instructed his co-defendants to do whatever they had to to get either his money or his drugs and gave co-defendant Watson a gun, telling him to shoot at least four times. We find that the evidence presented to the jury supports a finding that Appellant intended for his co-defendant to shoot the victims.

**{¶47}** Appellant also argues the evidence does not support his conviction for Complicity to Aggravated Robbery because his co-defendants did not steal anything.

**{¶48}** Testimony was presented to the jury by the co-defendants that they kicked-in the door to the victims' room with the intent to get the money owed to Appellant or retrieve Appellant's drugs. The act of kicking-in the door, with a deadly weapon, while attempting to commit a theft offense supports the conviction for aggravated robbery.

{¶49} We find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that Appellant's convictions be reversed and a new trial ordered. Appellant's convictions are not against the manifest weight or sufficiency of the evidence.

{¶50} Appellant's first and second assignments of error are overruled

**III.**

{¶51} In his third assignment of error, Appellant argues that the trial court erred in allowing the autopsy photos to be shown to the jury. We disagree.

{¶52} The admission of photographic evidence is left to the discretion of the trial court. *State v. Maurer,* 15 Ohio St.3d 239, 264, 473 N.E.2d 768, 791 (1984); *State v. Morales,* 32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273 (1987). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶53} Relevant, non-repetitive photographs, even if gruesome, are admissible if the probative value of each photograph exceeds the prejudicial impact to the accused. *Maurer, supra*, at paragraph seven of the syllabus; *Morales, supra*, at 257.

{¶54} The photographs in question show the victims' wounds caused by the bullets fired from the gun given to co-defendant Watson by Appellant.

{¶55} Here, the trial court, after hearing arguments from each side, excluded two autopsy photographs after determining that such photographs would be prejudicial due to their graphic nature.

{¶56} In overruling Appellant's objections to the rest of the photographs, the trial court, after explaining its reasons for excluding two of the photographs, stated:

I don't think they are prejudicial in nature, it looks like you are showing a close up of a mosquito bite, nothing shocking or horror or emotions, that results from that clearly seeing someone with their head chopped off would, and the chest open could. And there is a photograph that shows part of the opening in the chest cavity, but I did not think it was having shock and horror. That is my ruling and you can decide if you want to submit that stipulation into the record or not. (T. at 836).

**{¶57}** Having viewed the photographs, we do not find that the trial court erred in allowing the introduction of the photographs. The trial court carefully considered each of the photographs and found all but two to be more probative than prejudicial. The photographs assisted the State in explaining where the victims were shot and how Maust died.

**{¶58}** Further, while the admission of multiple photos of the victims' injuries, along with the testimony of the coroner, may have been repetitive under Ohio Evid.R. 403 and 611(A), we find no evidence that introduction of such photos affected the outcome of the trial. Rather, such photographs depicted the fatal wounds caused by the gunshots which led to the death of the victim.

**{¶59}** The trial court did not abuse its discretion in determining that the probative value of the autopsy photographs outweighed their prejudicial effect.

**{¶60}** Appellant's third assignment of error is overruled.

**IV.**

**{¶61}** In his fourth assignment of error, Appellant argues that the trial court erred in allowing text messages from Appellant's girlfriend into evidence.  We disagree.

**{¶62}** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App. No. 1999CA00027.

**{¶63}** As a general rule, all relevant evidence is admissible. Evid.R. 402. However, under Evid.R. 802, hearsay evidence is not admissible, "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

**{¶64}** At trial, the State introduced Facebook messages between Appellant and his girlfriend. (T. at 574). Defense counsel acknowledged that Appellant's side of the messages were admissible as statements against interest, however counsel objected as to the girlfriend's statements, arguing that she was not present for cross-examination. (T. at 575). The following text exchanges, which took place between June 11, 2019, and June 14, 2019, were read into evidence:

> Wickham: "okay, get rid of the gun, okay, please, I am begging you."
>
> Morris: "Can't."
>
> Wickham: "Well, then stop carrying it please, especially when you have (S.M]. All right."
>
> Morris denied carrying the gun around [S.M], to which Wickham texted: "You did yesterday."

Morris: "Yeah, because I was going to shoot it at my grammies."

Wickham: "Please just stop having it out where people can take pictures of you holding it and F.R. I don't know what that is,"

Morris replied, "OK."

(T. at 578-582).

**{¶65}** Morris and Wickham then discussed Morris' involvement with selling drugs. Morris asked Wickham if she was "pissed off," and when Wickham asked why, Morris said, "because this bitch ran off with 50 dollars of mine." *Id.*

Wickham: "stop trusting people with your money baby,"

Morris: "I did not give no one my money, baby, they ran off with 50 dollars of my stuff."

Wickham then asked if Morris was "selling," to which he replied that he was, and when Wickham asked him why he was selling, he replied, "Money."

(T. at 583).

**{¶66}** Appellant's statements were admissible under Evid.R. 801(D)(2)(a), which states, in pertinent part, that "[t]he statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity."

**{¶67}** We find that Wickham's statements were admitted for the purpose of giving context to Appellant's admissions.

**{¶68}** Statements of the other individuals on recordings were not hearsay because they were admitted simply to provide context for [Appellant's] statements. *State v. Townsend*, 9th Dist. Summit No. 27316, 2015-Ohio-1124, ¶ 13; *See State v. Brown,* 1st

Dist. Hamilton No. C–120327, 2013–Ohio–2720, ¶ 25; *State v. Twitty,* 2d Dist. Montgomery No. 18749, 2002–Ohio–5595, ¶ 20–21.

**{¶69}** The Ohio Supreme Court has recognized that if a statement is not offered for the truth of the matter asserted, it is not prohibited by the hearsay rule and will be admissible, subject to the standards governing relevancy and undue prejudice. *State v. LaMar,* 95 Ohio St.3d 181, 196, 767 N.E.2d 166, 2002-Ohio-2128, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 262-263, 473 N .E.2d 768. Thus " 'testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay.' " *Id.,* quoting *Maurer* at 262.

**{¶70}** Appellant further argues that even if the text exchanges were admissible, they were unfairly prejudicial.

**{¶71}** In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. *State v. Hymore*, 9 Ohio St.2d 122, 224 N.E.2d 126 (1967), paragraph seven of the syllabus. In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). Furthermore, relevant evidence which is challenged as having probative value that is substantially outweighed by its prejudicial effects "should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect" to the party opposing its admission. *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

**{¶72}** Here, we find that the probative value of text messages was high as they relate to Appellant having the firearm, as well as his feelings about losing $50.00.

**{¶73}** Appellant's fourth assignment of error is overruled.

**V.**

**{¶74}** In his fifth assignment of error, Appellant argues that R.C. §2953.08(D(3) is unconstitutional on its face and as applied. We disagree.

**{¶75}** Appellant's arguments in this case are that R.C. 2953.08 is unconstitutional because it forecloses appellate review of his sentence. However, the Supreme Court of Ohio recently clarified in *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803, that R.C. §2953.08(D)(3) does not preclude an appeal of a sentence for a murder or an aggravated-murder offense that is based on constitutional grounds. *Id.* at ¶ 22. The court explained that R.C. §2953.02 also provides a statutory right to appeal a sentence to the court of appeals. *Id.* at ¶ 16.

**{¶76}** Here, Appellant's challenges to his sentence are based on constitutional grounds. He is therefore not precluded from appealing his sentence pursuant to R.C. §2953.08(D)(3).

**{¶77}** "The law is clear that 'courts should avoid reaching constitutional issues if they can decide the case on other grounds.' *DeVan v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4279, 45 N.E.3d 661, ¶ 10 (8th Dist.). Courts should 'not reach constitutional issues unless absolutely necessary.' *See In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937, ¶ 7, quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9." *Id.* at ¶ 39.

**{¶78}** Applying these long-standing principles, we elect not to consider the constitutionality of R.C. §2953.08(D)(3) in this case. Appellant's argument is that R.C. §2953.08 is unconstitutional because it forecloses appellate review of his sentence. However, as set forth above, in *Patrick*, the Supreme Court of Ohio clearly held that R.C. §2953.08(D)(3) does not preclude all appellate review of sentences imposed for murder and aggravated-murder offenses

**{¶79}** Appellant's fifth assignment of error is overruled.

**VI.**

**{¶80}** In his sixth assignment of error, Appellant argues that the trial court erred in sentencing Appellant because it failed to consider Appellant's youth as a factor. We disagree.

**{¶81}** Appellant argues his sentence of life in prison with parole eligibility after thirty-eight to forty-three years is unconstitutional based on the December 22, 2020 decision of the Ohio Supreme Court in *State v. Patrick,* 2020-Ohio-6803. Patrick, who was a juvenile at the time of the offenses, was convicted of aggravated murder, aggravated robbery, and tampering with evidence following a jury trial as an adult. He was sentenced to an aggregate term of incarceration of life with parole eligibility after 33 years. The Ohio Supreme Court held the Eighth Amendment's prohibition on cruel and unusual punishment requires a trial court, before imposing a sentence which includes a possibility of life imprisonment on a juvenile offender, to consider and articulate its consideration of the offender's youth as a mitigating factor when imposing sentence. *Id.* at ¶2. "Given the high likelihood of the juvenile offender spending his or her life in prison, the need for an individualized sentencing decision that considers the offender's youth and

its attendant characteristics is critical when life without parole is a potential sentence." *Id.* at ¶36. In so holding, the Ohio Supreme Court noted:

> We know that a sentence of life without the possibility of parole "forswears altogether the rehabilitative ideal." *Graham,* 560 U.S. at 74, 130 S.Ct. 2011. We also know that the characteristics of youth include diminished culpability and heightened capacity for change. This brings to mind an illustration.
>
> In the movie The Shawshank Redemption, the character "Red," portrayed by Morgan Freeman, faces the parole board after having served 40 years of a life sentence and having been previously denied parole twice after serving 20 and 30 years of his sentence. In response to a member of the parole board's question about whether he has been rehabilitated, he responds: "Rehabilitated? Well, now, let *me see. * * * What do you really want to know? Am I sorry for what I did*?" *Then, he explains*:
>
> "There's not a day goes by I don't feel regret. Not because I'm in here, or because you think I should. I look back on the way I was then, a young, stupid kid who committed that terrible crime. I want to talk to him. I want to try to talk some sense in to him, tell him the way things are, but I can't. That kid's long gone, and this old man is all that's left. I got to live with that."

The Shawshank Redemption (Castle Rock Entertainment 1994).

> Certainly, before imposing a life sentence on a juvenile offender, there is room in our justice system for a trial court to make an individualized

sentencing determination that articulates its consideration of the offender's youth, and all that comes with it, before an old man is all that is left.

**{¶82}** *Id.* at ¶¶39-41.

**{¶83}** In a recent decision filed April 16, 2021, *State v. Watson*, 5th Dist. Ashland No. 20-COA-014, 2021-Ohio-1361, ¶¶ 8-14, this Court considered this same issue as raised by Appellant's co-defendant. This Court held:

> In the instant case, the record is devoid of an articulation of consideration of Appellant's youth by the trial court prior to imposing a sentence which included a potential term of life imprisonment. While we recognized the trial court did not have the benefit of the Ohio Supreme Court's decision in *Patrick* at the time sentence was imposed, we find Appellant's sentence is unconstitutional for the reasons set forth in *Patrick.*

> ***

> Because the trial court ultimately determines the sentence entered in a particular case, we find the same policy considerations underlying the *Patrick* decision regarding the potential of a juvenile serving a life sentence apply whether the sentence is part of a plea agreement or imposed following trial. We find the constitutional responsibility placed upon the trial court to consider the youth of the offender in mitigation of a potential life sentence and to articulate such consideration on the record is not abrogated simply because the sentence was jointly recommended, particularly in the instant case where *Patrick* had not yet been decided at the time the plea agreement was entered.

{¶84} Six days after our decision in *Watson, supra*, on April 22, 2021, the United States Supreme Court decided *Jones v. Mississippi*, 539 U.S. ——, ——, 141 S.Ct. 1307, 1311, —— L.Ed.2d —— (2021). In *Jones*, the Court considered a defendant's claim that the sentencing court erred by imposing life with parole eligibility (LWOP) sentences for crimes that the defendant had committed as a minor, because the sentencing court failed to make a factual finding of permanent incorrigibility or, at the very least, an on-the-record explanation of the sentence containing an "implicit finding" of permanent incorrigibility. 141 S.Ct. at 1313. But the United States Supreme Court upheld the sentence, holding that *Miller* does not require a separate factual finding of permanent incorrigibility before a sentencer imposes an LWOP sentence on a murderer under age 18. See *Jones*, 141 S.Ct. at 1314-1319. And the Court rejected Jones's alternative argument that a sentencer must at least make an on-the-record explanation for the sentence that carried an "implicit finding" of permanent incorrigibility, saying that an on-the-record finding is (1) not necessary to ensure that a sentencer considers a defendant's youth, (2) not required by or consistent with *Miller* or the Court's analogous death penalty precedents, and (3) not dictated by any consistent historical or contemporary sentencing practice in the States. *See id.* at 1319-1321. In particular, the Court explained, "if the sentencer has discretion to consider the defendant's youth [as *Miller* requires] ... it would be all but impossible for a sentencer to avoid considering that mitigating factor," especially where defense counsel makes arguments focused on the offender's youth. *Id.* at 1319.

{¶85} In short, *Jones* clarified that although the Eighth Amendment requires that, before sentencing a juvenile murderer to LWOP, a trial court must hold a sentencing hearing where the defendant's age and characteristics of children are *considered*, neither

*Miller* nor *Montgomery* requires a sentencer to say anything on the record about youth and its attendant characteristics before imposing an LWOP sentence.

**{¶86}** Based on the United States Supreme Court decision in *Jones v. Mississippi*, *supra*, we find Appellant's sixth assignment of error not well-taken and deny same.

## VII.

**{¶87}** In his seventh assignment of error, Appellant argues that his sentence is not supported by the record. We disagree.

**{¶88}** R.C. §2953.08 governs appeals based on felony sentencing guidelines. Subsection (G)(2) sets forth this Court's standard of review as follows:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶89}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶90}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶ 36.

**{¶91}** Here, Appellant does not argue that his sentence is contrary to law and we find that Appellant's sentence is within the statutory range.

**{¶92}** This Court is therefore without authority to disturb Appellant's sentence absent a finding by clear and convincing evidence that the record does not support the trial court's findings under R.C. §2929.11 and R.C. §2929.12.

**{¶93}** Here, before sentencing Appellant, the trial court heard arguments from Appellant's counsel, considered the pre-sentence investigation report, and listened to the family of the victims. The court considered the fact that Appellant was found guilty of nine felonies, most of which were felonies of violence.

**{¶94}** Further, in its Judgment Entry filed April 24, 2020, the trial court indicated it reviewed the presentence investigation report and noted it considered "the purposes of felony sentencing as set forth in Ohio Revised Code Section 2929.11," and "fully

considered the provisions of O.R.C. Chapter 2929, the circumstances of the offense, the information contained in the pre-sentence investigation, and the information furnished by the parties to this case." (JE at 2-3). The trial court stated the following:

> Based upon consideration of the purposes and principles of the felony sentencing law, the statutory sentencing factors, and after weighing the above findings, this Court finds that the Defendant is NOT amenable to community control sanctions and that a prison sentence is consistent with the purposes and principles of the felony sentencing law of Ohio and that community control is not required.

**{¶95}** Upon review, we find the sentence imposed is not clearly and convincingly contrary to law. The sentence is within the statutory range for a felony of the first degree, and the trial court considered the R.C. §2929.11 and §2929.12 factors.

**{¶96}** The record in this case supports the sentence imposed by the trial court.

**{¶97}** Appellant's seventh assignment of error is overruled.

## VIII.

**{¶98}** In his eighth and final assignment of error, Appellant argues that he received ineffective assistance of counsel.  We disagree.

**{¶99}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether the Appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838,

122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶100}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

**{¶101}** In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley, supra* at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**{¶102}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

**{¶103}** Here, Appellant argues that trial counsel's failure to request a competency evaluation constituted ineffective assistance of counsel.

**{¶104}** In the context of a criminal trial, a trial court's failure to hold a competency hearing does not rise to constitutional proportions unless the record contains sufficient indicia of incompetency. *State v. Bock* (1986), 28 Ohio St.3d 108, 502 N.E.2d 1016.

According to *Bock,* "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.* at 110, 502 N.E.2d 1016.

**{¶105}** R.C. §2945.37(A) provides that "[a] defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting his defense." In the instant case, Appellant has failed to point to any evidence in the record demonstrating his incompetency to stand trial.

**{¶106}** Upon review, we find Appellant is unable to demonstrate he was prejudiced by counsel's failure to request a competency evaluation. Accordingly, this argument fails under the second prong of *Strickland, supra,* and *Bradley, supra.*

**{¶107}** Appellant's eighth assignment of error is overruled

**{¶108}** The judgment of the Court of Common Pleas, Ashland County, Ohio, is affirmed.

By: Wise, John, P. J.
Delaney, J., and
Wise, Earle, J., concur.


JWW/kw 0729