[Cite as *State v. Wright*, 2023-Ohio-1389.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
|     Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 22 CAA 04 0032 |
| D'VONTAE WRIGHT | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Anders


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     April 27, 2023


APPEARANCES:

For Plaintiff-Appellee

JOEL C. WALKER
ASSISTANT PROSECUTOR
140 North Sandusky Street, 3rd Floor
Delaware, Ohio  43015

For Defendant-Appellant

APRIL F. CAMPBELL
CAMPBELL LAW, LLC
545 Metro Place South, Suite 100
Dublin, Ohio  43017

*Wise, P. J.*

**{¶1}**   Defendant-appellant D'Vontae Wright appeals his convictions and sentence on one count of Robbery and one count of Failure to Comply with an Order or Signal of a Police Officer following a jury trial in the Delaware County Court of Common Pleas.

*Facts and procedural history*

**{¶2}**   On August 19, 2021, a Delaware County Grand Jury indicted D'Vontae Wright on one count of Robbery, in violation of R.C. §2911.02(A)(2), a second-degree felony, and one count of Failure to Comply with an Order or Signal of a Police Officer, in violation of R.C. §2921.331(B), a third-degree felony. The robbery charge also contained a repeat violent offender specification based on prior convictions for burglary and aggravated robbery in Franklin County.

**{¶3}**   The charges arose out of the following events:

**{¶4}**   On August 8, 2021, Shanna Ayers, an employee of Circle K and victim of the robbery, had been at work for a few hours at the Circle K store when she called her manager, Heather Chapman, because she needed change for the cash register. (T. at 231). Ayers did not have access to the store safe so she needed Chapman to get the change she needed. *Id.*

**{¶5}**   Chapman had just opened the safe and was transferring money when Appellant D'Vontae Wright ran into the Circle K, covered from head to toe. (T. at 235). Ayers had no idea who the robber was at the time, just that he pushed her, shouted "move," and jumped over the counter. *Id.* Appellant then began wrestling for the money in the safe with Chapman, who was screaming for Ayers to call the police. Appellant took the money and ran. *Id.* Ayers tried to grab Appellant as he fled the scene. (T. at 237). She

hurt her finger in the process. *Id.* As he was fleeing, Appellant left behind his blue hat and a few coins. (T. at 240). Appellant then got in his car and sped off. Ayers called the police. (T. at 244).

**{¶6}** Deputy Emily Williams, arriving first to the scene, noticed the blue hat along with the trail of coins. (T. at 203-207). The deputy also noted the two females present: Shanna Ayers and Heather Chapman (T. at 206-207). Officers then got surveillance footage from Circle K and the adjacent business, in which they observed the masked man get into a Dodge Dart and take off. (T. at 362-406).

**{¶7}** Viewing the surveillance video, the detective found it odd that the robber came just when Chapman happened to have the safe opened, as these types of safes usually had a ten-minute failsafe. (T. at 371). Finding it to be too coincidental, the detective acted on his hunch and spoke with Ms. Chapman, who told the detective that her boyfriend, D'Vontae Wright, drove her to work that day, and that the car in the surveillance video was her Dodge Dart. (T. at 372-375). She also gave the detective her upcoming work schedule. *Id.*

**{¶8}** Det. Williams got an arrest warrant for Wright two days later. (T. at 383). Knowing Chapman's schedule and that Wright normally dropped Chapman off at work, the detective formed a plan to execute Wright's arrest warrant at the Circle K that day, August 10, 2021. *Id.* When Wright dropped Chapman off at work that day, the officers watched as Wright exited the passenger side of the vehicle and as Chapman went behind the Dart to the trunk area of the car. (T. at 386). Det. Williams then gave the green light for Wright's takedown. However as soon as Wright realized he was about to be arrested, he jumped in the car and took off, striking Chapman with the front of the vehicle as he

did. (T. at 387). Because Chapman had been struck, Det. Williams remained on scene while other officers pursued Wright. Ultimately Wright was caught and charged both for the robbery and for fleeing and alluding in this case.

{¶9} Wright requested and was granted three continuances for a number of reasons, including having a conflict with his attorney which resulted in her withdrawal.

{¶10} A few days before Wright's fourth trial date, his attorney moved to continue Wright's trial again. The stated reason was that he was newly appointed six weeks before trial, and that while he had been provided discovery, he was unsure if he had complete discovery. The trial court denied that motion.

{¶11} On the eve of Wright's fourth trial, Wright decided to plead guilty. He then changed his mind and decided he wanted to have his trial. The State asked for a continuance because it had let all of its witnesses go based on a good faith assurance from defense that Wright intended to plead guilty. Wright's counsel joined in that motion, but the trial court denied it

{¶12} The State moved the trial court to allow it to introduce Heather Chapman's statements through Det. Williams when she failed to show up, even though she was subpoenaed. (T. at 292). In support, the State proffered a jail call from Wright to Chapman only the night before in which Wright attempted to persuade Chapman not to appear to testify against him. (T. at 290). Wright's attorney did not object to the testimony but instead asserted that Wright was not threatening in the jail calls. (T. at 291). The trial court allowed the testimony under Evid.R. 804(b)(6). (T. at 294).

{¶13} Since Wright admitted to robbing Circle K, his trial counsel's argument at trial was not that Wright did not commit the robbery, but rather that Wright should only be

charged with third-degree robbery. Counsel's argument was based on the statements presented from the employee-victim of the robbery at Wright's trial. Ayers had testified that while Wright had pushed her, he did not harm her but only made her angry. (T. at 249). She testified her finger, which had been swollen for a few days, was fine. (T. at 250). She claimed that it was her own fault her finger was injured because she grabbed Wright as he fled with Circle K's money. (T. at 253).

{¶14} The State argued that Wright caused harm to Ayers because he was responsible for the foreseeable result of his crime.

{¶15} Following deliberations, the jury convicted Wright of second-degree felony robbery and third-degree felony failure to comply with an officer's order.

{¶16} The trial court sentenced Wright to an eight (8) year minimum term on the robbery count and a 36-month term the failure to comply offense, to be served consecutively for an aggregate term of eleven (11) years. (Sent. T. at 1-12). The trial court also found Wright was a repeat violent offender, but did not impose a separate sentence, because the jury did not make the necessary findings by statute to impose a prison term for that specification. (Sent. T. at 12). Also, because Wright was on post-release control at the time of the offense, the trial court sentenced Wright to serve the remainder of his post-release control term from Judge Wood's sentencing of Wright in Franklin County Common Pleas Case No. 16CR4272. (Sent. T. at 15).

{¶17} Appellant now appeals.

*Potential Assignments of Error*

{¶18} Counsel for Appellant Wright has filed a Motion to Withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) asserting four potential assignments of error:

{¶19} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY DECLINING TO CONTINUE WRIGHT'S TRIAL.

{¶20} "II. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE DETECTIVE TESTIFYING ABOUT STATEMENTS WITNESS CHAPMAN MADE TO HIM ON CONFRONTATION AND HEARSAY GROUNDS.

{¶21} "III. THE EVIDENCE WAS LEGALLY INSUFFICIENT AND WEIGHED MANIFESTLY AGAINST CONVICTING WRIGHT OF SECOND-DEGREE ROBBERY INSTEAD OF THIRD-DEGREE ROBBERY.

{¶22} "IV. THE TRIAL COURT ERRED IN SENTENCING WRIGHT."

*Law and Analysis*

{¶23} In *Anders*, the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw. 386 U.S. at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal. *Id.* Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses. *Id.* Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines

that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires. *Id.*

**{¶24}** By Judgment Entry filed January 23, 2023, this Court noted that counsel had filed an *Anders* brief and had indicated to the Court that he had served Appellant with the brief. Accordingly, this Court notified Appellant via Certified U.S. Mail that he "may file a pro se brief in support of the appeal within 60 days of the date of this entry."

**{¶25}** Appellant has not filed a *pro se* brief

**{¶26}** We find Appellant's counsel in this matter has adequately followed the procedures required by *Anders.*

## I.

### *Continuance*

**{¶27}** The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *State v. Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). In order to find an abuse of discretion, we must determine whether the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶28}** In reviewing a trial court's denial of a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise

to the need for the continuance; and other relevant factors, depending on the unique facts of each case. *Unger* at 67, 423 N.E.2d 1078.

**{¶29}** There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 1 L.Ed.2d 921 (1964).

**{¶30}** We have carefully examined the record in this case and conclude that the trial court lawfully exercised its discretion in refusing to grant the continuance. Most notably, Appellant had been previously granted numerous continuances. Further, the request was made the day of trial.

**{¶31}** Upon review, we find no abuse of discretion in denying the request for a continuance.

## II.

### *Ineffective assistance of counsel*

**{¶32}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).*

**{¶33}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶34}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶35}** Upon review, we see no indication in the record that counsel was ineffective. While counsel references the introduction of certain hearsay statements by Detective Chapman with regard to his interview with witness Chapman, we find no unfair prejudice to Appellant as a result as such statements, especially in light of the evidence presented by the State that Appellant caused Chapman's unavailability. We find no hearsay violations or Confrontation Clause violations.

**{¶36}** Further, we do not find that the outcome of the trial would have been different without said testimony as the State also presented DNA evidence, Appellant's admission to having committed the crimes, and video evidence linking him to the crimes.

**{¶37}** Based on the record, we do not find the decision by trial counsel to not object to such statements to rise to the level of incompetence, nor do we find that the outcome of the trial would have different.

**III.**

*Manifest weight and sufficiency of the evidence*

**{¶38}** Counsel has also proposed an assignment of error that challenges the sufficiency of the evidence as well as the manifest weight of the evidence.

**{¶39}** In reviewing a challenge to the sufficiency of evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, appellate courts will not weigh evidence or assess credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). *State v. Perez*, 6th Dist. Wood No. WD-17-017, 2018-Ohio-1956, ¶ 20.

**{¶40}** In a manifest weight challenge, we must determine whether the greater amount of credible evidence supports the conviction. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. This court sits as if the "thirteenth juror" and must review the record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶41}** Upon review, we find that under the law of causation, Appellant is responsible for any foreseeable physical harm caused by his actions. The State herein presented testimony from Shanna Ayers that her finger was injured when she attempted

to stop Appellant from fleeing from the store with the stolen cash, thereby elevating the robbery charge to a second-degree felony.

**{¶42}** We find there was sufficient evidence presented to the jury wherein a rational trier-of-fact could have found the essential elements of second-degree felony robbery, and we find no indication that the jury lost its way and created a manifest miscarriage of justice.

### IV.

### *Sentencing*

**{¶43}** This Court reviews felony sentences using the standard of review set forth in R.C. § 2953.08. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. Subsection (G)(2) sets forth this Court's standard of review as follows:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of

section 2929.14, or division (I) of section 2929 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is contrary to law.

**{¶44}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶45}** "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range.' " *State v. Morris*, 5th Dist. Ashland No. 20-COA-015, 2021-Ohio-2646, ¶90, quoting *State v. Dinka,* 12th Dist. Warren Nos. CA2019-03-022 and CA2019-03-026, 2019-Ohio-4209, ¶36.

**{¶46}** Here, Appellant was convicted of second-degree felony robbery and third-degree felony failure to comply.

**{¶47}** Initially, we note that Appellant's eight (8) year sentence for a second-degree felony offense and 36-month sentence for a third-degree felony offense are within the statutory range. R.C. § 2929.14(A)(2)(a) - (3)(a).

**{¶48}** A review of the record shows that clear and convincing evidence supports the trial court's findings under R.C. § 2929.11 and R.C. § 2929.12. The trial court heard

Appellant's allocution, considered the facts in this case and considered Appellant's prior criminal history.

**{¶49}** Upon review, we find the sentence imposed is not clearly and convincingly contrary to law. The sentences are within the statutory range for felonies of the second and third degree, and the trial court considered the R.C. § 2929.11 and R.C. § 2929.12 factors.

**{¶50}** We therefore find no merit to these proposed assignments presented by appellant.

*Conclusion*

**{¶51}** After independently reviewing the record, we agree with counsel's conclusion that no arguably meritorious claims exist upon which to base an appeal. Hence, we find the appeal to be wholly frivolous under *Anders,* grant counsel's request to withdraw, and affirm the judgment of the Delaware County Court of Common Pleas.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/kw 0425